COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Beales and Senior Judge Willis


ERIC CHRISTOPHER LOGAN

v.      Record Nos. 0341-06-1 and                       MEMORANDUM OPINION[*]
            0363-06-1                                                  PER CURIAM
                                                                        DECEMBER 5, 2006
CITY OF HAMPTON DEPARTMENT
 OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Wilford Taylor, Jr., Judge

(J. Robert Harris, III, on brief), for appellant.  Appellant submitting
on brief.

(Rachel Allen, Assistant City Attorney, on brief), for appellee.
Appellee submitting on brief.

(Robert G. Saunders, Guardian *ad litem*; The Law Firm of Thomas
L. Hunter, P.C., on brief), for the infant child.  Guardian *ad litem*
submitting on brief.


    In a proceeding involving Eric C. Logan's ("father") minor child, T., father argues that

the trial court erred by changing the goal from return home to adoption.  He also maintains the

trial court erred by terminating his parental rights.  We disagree, and affirm the decision of the

trial court.

Background

    On appeal, we view the evidence in the "'light most favorable' to the prevailing party in

the circuit court and grant to that party the benefit of 'all reasonable inferences fairly deducible

therefrom.'"  Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

(2005) (quoting Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)).

T., along with her two older half-brothers, was removed from her residence on March 16, 2004, when she was five months old. On March 11, 2004, T.'s mother had been arrested on multiple outstanding felony warrants. The following day, father was arrested and charged with six counts of felony child abuse of T.'s older half-brothers. The boys came under the care of the Hampton Department of Social Services ("DSS"), and had severe belt marks, areas of scabbing, and broken skin on their face, arms, and back.

Despite the arrests of T.'s parents, the initial goal established by DSS was to return T. to her parents or to place her with her maternal grandmother. DSS established several goals in the initial foster care service plan for father to accomplish T.'s return home. Father was required to "complete a parenting capacity evaluation . . . and a substance abuse evaluation . . . and comply with all recommendations . . . ." He was also required to "follow through with recommendations of the Department," and "demonstrate [his] commitment to work with the Department towards the goal of reunification." Furthermore, he was to visit T. at least once a month.

From the time T. was removed on March 16, 2004, until the goal was changed to adoption on October 18, 2005, father was incarcerated on three separate occasions. The first incarceration lasted for one week in March 2004; the second incarceration was from February to April 2005; and three days after his release in April, father was incarcerated again in connection with the attempted rape, abduction, and malicious wounding of T.'s mother on April 24, 2005. Father was sentenced to six years for these offenses, with five years suspended, and was incarcerated at the time of the hearing in circuit court on the petition to change the goal to adoption and to terminate father's parental rights.

The circuit court hearing was held on January 4, 2006. In support of its petition to change the goal to adoption and to terminate father's parental rights, DSS relied on father's failure to accomplish several goals. Specifically, father failed to undergo psychiatric therapy for possible bipolar disorder, as recommended by his parenting capacity evaluation, and did not complete a substance abuse evaluation. Without explanation, he also stopped visiting T. in December 2004. DSS cited father's inability to meet T.'s needs as the result of his frequent incarcerations, as well as his failure to demonstrate a commitment to reunify with T., as evidenced by his assaulting and abducting T.'s mother.

T., born September 25, 2003, and her half-brothers have resided with the same foster parents from the time of their removal through the termination hearing. Brenda Dixon, their foster mother, testified T. and her siblings are doing well under her care. Social worker Shelley Matthews stated she had observed the children in the foster home on a monthly basis, and they had "very much" bonded with their foster parents. At the time of the termination hearing, T. was two years old.

Following the hearing, the circuit court granted the petition to change the goal to adoption pursuant to Code § 16.1-282, as well as the petition to terminate father's parental rights pursuant to Code § 16.1-283(C)(2). This appeal followed.

Analysis

Father argues the trial court erred by changing the goal from return to home to adoption, and in terminating his parental rights. Because we affirm the trial court's decision to terminate father's parental rights, we also affirm its decision approving the change in goal to adoption.[1]

---

[1] "Our decision to affirm the termination order necessarily subsumes this aspect of [his] appeal because a preponderance-of-the-evidence standard governs judicial modifications of foster care plans." Toms, 46 Va. App. at 265 n.3, 616 S.E.2d at 769 n.3 (citing Richmond Dep't of Soc. Servs. v. Carter, 28 Va. App. 494, 497, 507 S.E.2d 87, 88 (1998); Padilla v. Norfolk Div. of Soc. Servs., 22 Va. App. 643, 645, 472 S.E.2d 648, 649 (1996)).

When reviewing a decision to terminate parental rights, we presume the circuit court "'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Toms, 46 Va. App. at 265-66, 616 S.E.2d at 769 (quoting Fields v. Dinwiddie County Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005)). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. at 266, 616 S.E.2d at 769 (quoting Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted)). "In its capacity as factfinder, therefore, the circuit court retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Id. (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)).

The trial court terminated father's parental rights under Code § 16.1-283(C)(2). Code § 16.1-283(C)(2) requires clear and convincing evidence that termination is in the best interests of the child and that

> the parent . . . without good cause, ha[s] been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Father argues the trial court's decision to terminate his parental rights was erroneously based solely upon his incarceration. He notes that he had not abused T., he was "opposed" to the termination of his parental rights, and he "wished for his relatives to be considered as a possible placement."[2]

---

[2] To the extent father argues that termination was inappropriate because DSS failed to investigate placement with his relatives, we note that he lodged no objection to the circuit's ruling on this basis and, therefore, we decline to address this issue for the first time on appeal. See Rule 5A:18.

While father's incarceration, standing alone, is not sufficient to support the trial court's termination of his parental rights, "it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support [the] court's finding that the best interests of the child will be served by termination." Ferguson v. Stafford County Dep't of Soc. Servs., 14 Va. App. 333, 340, 417 S.E.2d 1, 5 (1992). By the same token, Code § 16.1-283(C)(2) contains no excuse for a parent's failure to remedy the conditions leading to foster care because he has been incarcerated for over twelve months subsequent to the child's placement in foster care.

The evidence showed not only that father had been repeatedly incarcerated during T.'s placement in foster care, but that he had physically abused T.'s older half-brothers and assaulted and abducted her mother. Futhermore, father failed to undergo psychiatric counseling and to complete a substance abuse evaluation, as required by DSS to facilitate T.'s return to him. By his actions and inactions, father failed to meet the requirements established in the foster care plan for T.'s return.

"When addressing matters concerning a child . . . the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). Even prior to his incarceration, father failed to maintain visitation with T. and to complete the substance abuse evaluation required by DSS. Furthermore, father failed to undergo psychiatric counseling for bipolar disorder as recommended by his parenting capacity evaluation. Upon release from incarceration in April 2005, father demonstrated his lack of commitment to T.'s return by assaulting and abducting T.'s mother. Notably, father had been incarcerated on three separate

occasions between March 2004 and the time of the termination hearing. "'[P]ast actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.'" Linkous v. Kingery, 10 Va. App. 45, 56, 390 S.E.2d 188, 194 (1990) (quoting Frye v. Spotte, 4 Va. App. 530, 536, 359 S.E.2d 315, 319 (1987)).

DSS proved by clear and convincing evidence that father, "without good cause, [was] unwilling or unable within a reasonable period of time not to exceed twelve months . . . to remedy substantially the conditions which led to or required continuation of" T.'s placement in foster care. Furthermore, because T. had a strong bond with her foster parents and had limited contact with father since infancy, the trial court did not err in finding that termination was in her best interests.

Based upon the foregoing, the evidence was sufficient to support the trial court's termination of father's parental rights and its decision to change the goal in the permanent foster care service plan to adoption.

Affirmed.